CHILTON v. CITY OF ST. JOSEPH, *Appellant.*

Division One, March 8, 1898.

1. **Sidewalks:** KNOWLEDGE: CARE. Knowledge of the defective condition of a sidewalk is to be taken into consideration in determining whether the person who was injured in passing over it exercised such care and caution as would have been exercised by an ordinarily prudent person. But such knowledge will not preclude a recovery.

2. **Measure of Damages:** INSTRUCTION. No error was committed in giving this instruction in a suit by the plaintiff against a city for injuries, among others a broken leg, sustained by a pedestrian along a sidewalk: "In estimating plaintiff's damages, if the jury find for her, they will take into consideration not only the physical injuries inflicted, the bodily pain and mental anguish endured and suffered, but also allow for such damages as appears from the evidence will reasonably result to her from said injuries in the future."

3. **Damages:** PENALTY FOR APPEALING. It is held that the circumstances of this case do not justify the infliction of a penalty of ten per cent in addition to the judgment.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*Casteel & Haynes* for appellant.

(1)   The court should have sustained defendant's demurrer to the evidence. Plaintiff can not recover in an action for negligence when her own negligence

contributed with that of the defendant to produce the injury. *Murry v. Railroad*, 101 Mo. 236; *Kellny v. Railroad*, 101 Mo. 67; *Weber v. Kansas City Cable Co.*, 100 Mo. 194; *Gleeson v. Excelsior Mfg. Co.*, 94 Mo. 201; *Hudson v. Railroad*, 101 Mo. 13; *Durkin v. Troy*, 61 Barb. 437; *Evans v. Utica*, 69 N. Y. 166; *Wilson v. Charleston*, 8 Allen, 137; *Belton v. Baxter*, 54 N. Y. 245; *Pennsylvania Co. v. Rathgeb*, 32 Ohio St. 66; *Schaeffer v. Sandusky*, 33 Ohio St. 246; *Buesching v. Gas Light Co.*, 73 Mo. 219. (2) And if it appears without any conflict of evidence, from plaintiff's own case, or from the cross-examination of her witnesses, that she was guilty of negligence, proximately contributing to produce the injury, it would be the duty of the court to take the case from the jury. *Buesching v. Gas Light Co.*, 73 Mo. 219; *Weber v. Kansas City Cable Co.*, 100 Mo. 194; *Hudson v. Railroad*, 101 Mo. 13; *Hill v. Tionesta Tp.*, 146 Pa. St. 11; *Lynch v. Erie City*, 151 Pa. St. 380; *Schaeffer v. Sandusky*, 33 Ohio St. 246. (3) Where one travels upon a sidewalk that is defective and dangerous and known to be by a party injured thereon, yet entered upon voluntarily and unnecessarily, the party can not be regarded as exercising ordinary prudence, and therefore does so at his own risk. *Durkin v. Troy*, 61 Barb. 437; *Evans v. Utica*, 69 N. Y. 166; *Wilson v. Charleston*, 8 Allen, 137; *Belton v. Baxter*, 54 N. Y. 245; *Pennsylvania Co. v. Rathgeb*, 32 Ohio St. 66; *Schaeffer v. Sandusky*, 33 Ohio St. 246; *Weirs v. Jones Co.*, 86 Iowa, 625; *Lovenguth v. Bloomington*, 71 Ill. 238; *Quincy v. Barker*, 81 Ill. 300; *Centralia v. Krouse*, 64 Ill. 19; *Wright v. St. Cloud*, 54 Minn. 94; *Lynch v. Erie City*, 151 Pa. St. 380; *Hill v. Tionesta*, 146 Pa. 11; *Forks Tp. v. King*, 84 Pa. St. 230; *Erie City v. Magill*, 101 Pa. St. 616; Wharton on Neg., sec. 400. (4) If a person

is injured on his own defective sidewalk, where the law imposed upon him the duty of keeping it in repair, I apprehend there would be no liability on the part of the city simply because it had charge of the streets and was chargeable with their condition.    A joint obligation to repair is like concurring negligence.    *Gleeson v. Excelsior Mfg. Co.*, 94 Mo. 201; R. S. 1889, sec. 1272.    (5)    Instruction number 1 nowhere requires plaintiff to have exercised ordinary care while upon the sidewalk, notwithstanding the defense is contributory negligence.    The case seems to have been submitted to the jury by this instruction on the theory that if the city was guilty of negligence and plaintiff was injured she could recover.    To say the least, it is misleading to a jury.    (6)    Instruction number 2 assumes that damages will result to plaintiff in the future.

*H. S. Kelley* and *J. W. Stokes* for respondent.

(1)    We deny that error was committed in submitting the case to the jury on plaintiff's evidence. We contend that when her statements as to the facts or any fact, and not her expressions of opinion, are considered in. the light of the physical facts in proof and the other testimony in the case, there is no ground whatever for imputing negligence to her in passing over the sidewalk or in anything she did or omitted to do while upon it.    She knew that the sidewalk was out of repair, that some of the boards were out in places and that some of the boards were loose, and the fact of her knowledge was a circumstance to be considered with other facts in determining whether she was guilty of contributory negligence.    There being no other fact tending to prove negligence on her part, the court might have refused to submit the question of contributory negligence to the jury.    It is true that she says she had

passed over the walk frequently and knew that there were boards out and loose boards in the walk, but it was used and walked on by everybody (no one thought of abandoning it) who had occasion to pass from plaintiff's neighborhood to the street car or to the church. Mrs. Chilton should not be blamed or considered negligent in walking over a sidewalk that was so extensively used by everybody—the best and most prudent people in that part of the city. It does not appear that she did anything or omitted to do anything that an ordinarily prudent person would not have done under the same circumstances. Any other or greater care on her part would have been extraordinary care, and the law did not require that of her. *Cohn v. City*, 108 Mo. 387; *Halpin v. Kansas City*, 76 Mo. 335; *Squires v. Chillicothe*, 89 Mo. 226; *Brennan v. St. Louis*, 92 Mo. 482; *McMahon v. Express Co.*, 132 Mo. 641; *Burdoin v. Trenton*, 116 Mo. 358.    (2)    The law is that the court will not and should not take a cause from the jury, where the evidence touching the question of negligence is such that men of ordinary intelligence might reasonably differ as to whether the party was guilty of negligence or not in the circumstances of the case or situation in which he was placed at the time. *Pierson v. City*, 69 Mo. App. 321; *Huhn v. Railroad*, 92 Mo. 440; *Tabler v. Railroad*, 93 Mo. 79; *Barry v. Railroad*, 98 Mo. 62; *Adams v. Railroad*, 100 Mo. 555; *Brown v. Railroad*, 99 Mo. 310; *Wiggin v. St. Louis*, 135 Mo. 558; *Prewitt v. Railroad*, 134 Mo. 615; *Kenney v. Railroad*, 105 Mo. 285; *Mauerman v. Siemerto*, 71 Mo. 101.    (3)    It is contended that plaintiff, Mrs. Chilton, knew that the sidewalk was defective and out of repair, and was guilty of negligence in attempting to walk upon it.    But it is the settled law that negligence does not necessarily arise from the knowledge of plaintiff of the defective condition of the sidewalk, but it is a ques-

tion of fact, to be determined from such knowledge and the other circumstances in evidence. *Huhn v. Railroad*, 92 Mo. 447; *Stoddard v. Railroad*, 65 Mo. 514; *Devlin v. Railroad*, 87 Mo. 545; *Flynn v. Neosho*, 114 Mo. 567; *Loewer v. Sedalia*, 77 Mo. 431; *Maus v. Springfield*, 101 Mo. 613; *Smith v. St. Joseph*, 45 Mo. 449; *Haniford v. City of Kansas*, 103 Mo. 172. (4) Plaintiff's knowledge of the dangerous condition of the sidewalk at the point where she was injured was admissible in evidence for the purpose of showing contributory negligence on her part, and this question was fairly submitted to the jury by instructions as favorable to defendant as the city counselor could write them. *Flynn v. Neosho*, 114 Mo. 572; 10 Am. R. R. and Corp. Cas., 706n; *Burdoin v. Trenton*, 116 Mo. 358. (5) Appellant suggests that the sidewalk where the accident happened was along by the church, and that it was the duty of the church to maintain the sidewalk, and as plaintiff was a member of the church, she was guilty of negligence in not maintaining it in repair, and therefore can not recover. This view seems to be an afterthought, a recent discovery. It was not mentioned in any way at the trial. An ordinance was read requiring a sidewalk to be built, and the evidence tends to show that the city built it, and the church was assessed for the cost of it. A case must be tried in this court on appeal upon the same theory that it was tried on in the lower court. *Claflin v. Sylvester*, 99 Mo. 276; *Nall v. Railroad*, 97 Mo. 68; *Helling v. United Order, Etc.*, 29 U. S. 309.

BRACE, P. J.—This is an action for damages for personal injuries received by the plaintiff from a fall on a defective sidewalk; in which she obtained judgment in the trial court for the sum of $3,333.33, from which judgment the defendant appeals.

It appears from the evidence for the plaintiff that the sidewalk in question, on the west side of Twenty-seventh, between Olive and Patee streets in the city of St. Joseph, was constructed of wooden stringers and boards. That the stringers were laid down about two feet six inches apart and the boards, about four feet long, were laid across the stringers, the ends extending on each side beyond the stringers from eight to ten inches, and being from six to eight inches above the ground. That at the time of the accident and for some months prior thereto the stringers were and had been in such a decayed condition at places that they would not hold the nails by which the boards were fastened to them. That in consequence of this condition some of the boards were loose and some misplaced, whereby some persons prior to the accident had been tripped and had fallen. That on the thirteenth of October, 1894, the plaintiff and a neighbor, Mrs. Dawson, returning home from the business part of the city after dark entered upon this sidewalk, which was the usual and ordinary route and way for that purpose, much used by the traveling public, and sufficiently lighted by electric lights to enable them to see very well; and while walking thereon side by side and talking to each other, Mrs. Dawson, being on the outside of the walk, stepped upon that part of one of the loose boards that projected beyond the stringers, causing it to fly up, and both of them to fall; the plaintiff's foot going down into the hole where the board had been, breaking her leg, on which the board fell with full force. The defendant introduced no evidence. The further evidence for the plaintiff will be noticed as far as is necessary in the course of the opinion. The errors assigned are that the court erred in refusing to instruct the jury to return a verdict for the defendant; in giving instructions one and four for plaintiff; and

that the damages are excessive.    The instructions com-
plained of are as follows:

"1.    The court instructs the jury that it was the
duty of the defendant city to see that the sidewalk in
question was constructed of such materials and in such
a manner as to make it reasonably safe for travel and to
see that it was kept and maintained in a reasonably
safe condition for use and travel thereon in the ordi-
nary modes, and if the jury believe from the evidence
that the defendant negligently or knowingly permitted
said sidewalk to be constructed in an improper, inse-
cure and defective manner by using insufficient string-
ers and placing the boards across the stringers so that
the ends of the boards lapped over the stringers at either
side and that the boards were insecurely nailed, whereby,
and by reason thereof, said sidewalk became and was
unsafe and dangerous and was not reasonably safe for
travel thereon, or if the jury believe from the evidence
that the sidewalk at the time and place when and where
plaintiff claims to have been injured was out of repair
and unsafe for travel thereon by the ordinary modes, by
reason of the stringers being unsound and the boards
being loose or insecurely nailed to said stringers, and
that defendant's officers, whose duty it was to keep said
sidewalk in repair, knew or might by the exercise of or-
dinary care and diligence have known of its defective
and unsafe condition in time to have repaired the same
before said alleged injury to plaintiff and that while
plaintiff was walking along said walk, where it was so
defective and out of repair by the side of Mrs. Dawson,
in the exercise of ordinary care herself, she was violently
thrown down upon the sidewalk and ground and in-
jured, by a loose or insecurely nailed board in said walk
flying up and out of its place when stepped on by Mrs.
Dawson who was walking in company with plaintiff,
then and in such case the jury should find for plaintiff,

although the jury may believe from the evidence that plaintiff knew the condition of said sidewalk and that it was out of repair and unsafe.

"4. In estimating plaintiff's damages, if the jury find for her, they will take into consideration not only the physical injury inflicted, the bodily pain and mental anguish endured and suffered, but may also allow for such damages as appears from the evidence will reasonably result to her from said injuries in the future, not to exceed in all the sum of ten thousand dollars."

I. On the first assignment counsel for defendant contend that the plaintiff upon her own evidence shows such contributory negligence as precludes a recovery, and in support of this contention cites the following part of that evidence elicited from her on cross-examination.

"*Q.* How long had you known the condition of this sidewalk before you were hurt? *A.* I had been hearing people talking about it being in bad condition for quite a while, I don't know just how long.

"*Q.* You knew that the boards were loose and the planks were out and that it was unsafe, did you not? *A.* Yes, sir.

"*Q.* You had passed over there day after day and observed it yourself, had you not? *A.* Yes, sir.

"*Q.* And you came along there that evening and paid no attention to the sidewalk? *A.* Oh, I was looking to see where I was going; I was not looking down to see my feet; I was going along just as anybody else would.

"*Q.* You were not paying any attention to the sidewalk at all? *A.* I was paying only enough to see where I was going, and to shun the boards that were up.

"*Q.* I took your deposition in this case; I will ask you if this is your signature here? *A.* Yes, sir,

that is my signature; I can not see it without glasses, though.

"The Court:    Here is a pair of glasses.

"The Witness:    Yes, sir, that is my signature.

"The Court:    That is your signature, is it?    A. Yes, sir.

"Mr. Amick:    I will ask you if this question was asked you in your deposition by me:    'Q.  Do you know what you and Mrs. Dawson were talking about at the time you fell?    A.  We were talking about being hungry.    Q.  Laughing and joking about being hungry?    A.  Yes, sir.    Q.  And you and she are neighbors and good friends?    A.  Yes, sir.    Q.  And were going along joking about being hungry?    A.  Yes, sir.    Q.  And paying no attention to the sidewalk at all?    A.  No, sir.'    Q.  Was that your deposition?    A.  Yes, sir, and I say I was paying no attention to the sidewalk now, only that I was on the sidewalk and not getting off of it; I was not paying any attention to loose boards, because I did not think about the boards being loose; a person don't always think about such things, if they did they would not get hurt.

"Q.  You think if you had been looking and had that on your mind you would not have been hurt?    A. Well, I think I would have been walking in the middle of the sidewalk, but anybody don't have that on their mind all the time.

"Q.  How often have you passed over that side-walk?    A.  Well, I don't know; any person living in a place five years would not know how often.

"Q.  How many persons do you know that have been hurt there before you were hurt there?    A.    I knew of three or four different ones.

"Q.  Your son had been hurt once, hadn't he?    A.  Yes, sir, he fell there, he was not hurt much, only skinned his shin a little.

"*Q.* What were you and Mrs. Dawson talking about at the time you came along there?  *A.* I think we were talking about something to eat, to the best of my knowledge.

"*Q.* You were joking with each other about it, were you?  *A.* Well, I don't know that we were joking, we were talking about being hungry.

"*Q.* Were you not walking along right briskly? A.  No, sir, a very moderate gait.

"*Q.* Now, the electric light was just ahead of you on the corner was it?  A.  Yes, sir, one just ahead and one behind us.

"*Q.* And it was light there?  *A.*  Yes, sir."

We fail to discover in this evidence sufficient ground for taking the case from the jury.  It must, of course, be read in connection with all the other undisputed facts and circumstances in the case, remembering also at the same time that the witness was testifying in the light of a knowledge gained from the circumstances of the accident itself, an experience that ofttimes after the event suggests precautions that would not have occurred to an ordinarily prudent person before the event.  While the sidewalk was out of repair and in a defective condition, it was not necessarily dangerous to those passing over it with ordinary care; and while the plaintiff in a general way knew that some of the boards were loose and some out of place, it does not necessarily follow that she knew of the defective construction of the sidewalk, or that there was any indication at the place when she met with the accident that the board on which Mrs. Dawson stepped was loose.  All the evidence tends to prove that she was moving over the sidewalk at a moderate gate, looking before for any danger that might be threatened from misplaced boards, not thinking, perhaps, of boards that were in place, but might be loose, but

from which she need apprehend no danger, so long as she kept within the stringers, or over the one on her side, or which she could avoid as she came to them, when suddenly by the stepping of Mrs. Dawson on a loose board in the walk, of the condition of which there may have been no apparent indication and of which act the plaintiff had no warning, the condition was produced that immediately caused the accident. There is nothing in all this to indicate that her conduct after she entered upon the sidewalk, was not that of an ordinarily prudent person, and while plaintiff's knowledge of the defective condition of the sidewalk, such as it was, is to be taken into consideration in determining whether in passing over it she exercised such care and caution as would have been exercised by an ordinarily prudent person, that such knowledge will not preclude a recovery is well settled law in this State. *Nixon v. Railroad*, 141 Mo. 425; *Graney v. St. Louis*, 141 Mo. 180; *Wiggin v. St. Louis*, 135 Mo. 558; *Flynn v. Neosho*, 114 Mo. 567; *Barr v. Kansas City*, 105 Mo. 550; *Maus v. Springfield*, 101 Mo. 613; *Loewer v. Sedalia*, 77 Mo. 431; *Buesching v. St. Louis Gaslight Co.*, 73 Mo. 219; *Madison v. Railroad*, 60 Mo. App. 599. Nor does the fact that this sidewalk ran alongside the premises of the Christian church, of which the plaintiff may have been a member, preclude such recovery. The court committed no error in submitting the case to the jury.

II.    The criticism of instruction 1 is that it "nowhere requires plaintiff to have exercised ordinary care while the defense is contributory negligence." This is a mistake, obvious upon the face of the instruction. Besides, the defense of contributory negligence was placed fully, fairly and clearly before the jury in other instructions.

3.   As to instruction number 4, it is only necessary to say that the damages are predicated only upon such injuries as were the necessary concomitants and consequences of her misfortune, superinduced by defendant's negligence and contains no unwarranted assumption, and in view of the extent of those injuries the verdict is not excessive. Counsel for plaintiff ask that the judgment be affirmed with ten per cent damages. We do not think the circumstances of the case call for the infliction of this penalty, but finding no error in the trial of the case, the judgment of the circuit court will be affirmed. ROBINSON and WILLIAMS, JJ., concur.